IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SYLVIA N., ALEXANDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-3188-CV-S-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

ORDER

Pending before the Court is Plaintiff Sylvia Alexander's ("Alexander") Motion for Summary Judgment [Doc. # 6]. Alexander seeks judicial review of the Commissioner's denial of her requests for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq., and supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record as a whole, the Court denies Alexander's motion.

**I.    Factual Background**

   **A.    Medical Records**

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

Alexander began seeking treatment for hip, neck and back pain and headaches in November 1982, before her treating chiropractor, Thomas Brown, D.C., referred her for a second opinion in February 2004, when her pain stopped improving with his treatment. (Tr. 224). Alexander has been in two motor vehicle accidents - in 2000 and 2003 - which are responsible, in part, for her pain. (Tr. 15).

In January 2003, Alexander underwent an evaluation by Lori MacPherson, M.D. ("MacPherson"). MacPherson diagnosed Alexander with cervical and lumbar facet arthropathy, post-traumatic/unspecified torticollis, myofascial pain syndrome, prirformis syndrome, postural deficits, stomach pain/constipation, GERD, headache, sinus pain/congestion and depression. MacPherson noted Alexander's past medical history as bulging disc in back, chronic back pain related to motor vehicle accident injuries, and depression. (Tr. 140-181). MacPherson referred Alexander to the Pain Clinic for treatment. From July 29, 2003 through August 20, 2004, Boyd D. Crockett, M.D. ("Crockett"), treated Alexander. He believed her symptoms were related to the motor vehicle accident of April 22, 2003. (Tr. 281). Crockett referred Alexander to the Pain Clinic for pain management and for physical therapy. (Tr. 275; 273). Crockett opined that Alexander had reached maximum medical improvement with regard to the work-related motor vehicle accident. (Tr. 266).

As directed by Crockett, Alexander attended physical therapy at Physical Therapy Specialists Clinic from July 29, 2003 through November 21, 2003. (Tr. 183-211). She initially reported headaches, low back pain, neck pain, left thigh pain/burning sensation.

(Tr. 209-210). At the end of her physical therapy course, Alexander was still reporting pain relating to the cervical and bilateral hip areas. (Tr. 183).

Alexander was treated at Doctors Hospital of Springfield (Pain Clinic) from September 9, 2003 through January 13, 2004, before being released back to Crocket's care. (Tr. 213-220). On February 23, 2004, Alexander underwent a functional capacity exam with Nancy Dickey ("Dickey"), occupational therapist. (Tr. 225-251). Alexander failed the validity test which indicated she had given less than maximum voluntary effort and that the test results did not measure her full functional abilities as she made attempts to control the test results. The test results indicated symptom magnification. (Tr. 225). Dickey indicated Alexander's movement patterns changed with distraction throughout the evaluation and showed poor consistency in movement patterns, suggestive of poor validity in her performance. (Tr. 225).

Alexander was treated for chronic low back pain and left upper back pain at St. John's Spine Center, by Ron Ellis, M.D., from December 9, 2004, through January 20, 2005 (Tr. 343-351). On December 15, 2004, a bone scan revealed increased activity at approximately L4-L5 and L5 in the region of the vertebral bodies, thought to be related to degenerative disc disease and/or altered mechanical stress; minimal increase of activity at the left knee compatible with degenerative change; and increased activity in the left mandible compatible with dental disease. (Tr. 347-348). Alexander filed her application disability insurance benefits on November 8, 2004.

On February 9, 2005, Rana Mauldin, M.D. ("Mauldin"), a non-examining consultant for the Social Security Administration, completed a residual functional capacity assessment, after reviewing Alexander's records. Mauldin opined that Alexander could occasionally lift/carry 10 pounds; frequently lift/carry less than 10 pounds; stand/walk at least 2 hours in an 8-hour workday; sit about 6 hours; was unlimited in push/pull; frequent balance; occasional climb, stoop, kneel, crouch, crawl; avoid concentrated exposure to extreme cold, vibration, or hazards; with no additional restrictions. (Tr. 352-359). A psychiatric review technique was completed by Geoffrey Sutton, Ph.D., a non-examining consultant for the Social Security Administration on February 17, 2005. He opined Alexander's impairment of depression was not severe. (Tr. 362-375).

Alexander's treating physician since June 16, 2004, has been David Barbe, M.D. ("Barbe").[2] (Tr. 386-402). Barbe treated Alexander for bilateral knee pain, chronic low back pain, and neck pain as a result of Alexander's motor vehicle accidents. His assessment also included chronic sciatica, fibromyalgia, and migraine headaches. On February 17, 2006, Barbe advised Alexander they would need to shift to chronic pain management mode. As with Brown, Crockett and MacPherson, he did not feel there was any curative procedure for her back pain. His assessment was widespread musculoskeletal pain which he suspected was fibromyalgia and/or chronic pain syndrome.

---

[2] Alexander suggests that some of Barbe's treatment notes may be missing from the record, although she does not state the relevance of those missing pages given that she is relying on his RFC, which is provided without any omission.

4

Barbe completed an Evaluation of Functional Capacity on February 20, 2006, in which he opined Alexander could frequently lift/carry 10 pounds; occasionally lift/carry 25 pounds; could stand 3 hours of an 8-hour workday "with frequent rest periods"; could sit 4 hours of an 8-hour workday; and if allowed to alternately sit and stand at will, Alexander could do so for 4 hours of an 8-hour workday; had substantial limitation with regard to climbing, kneeling and crouching; moderate limitation with regard to stooping or bending; mild limitation with regard to balancing, with no additional restrictions noted. (Tr. 383-384).

### B. Administrative Hearing

Alexander's case was heard by Administrative Law Judge Arthur T. Stephenson on October 13, 2006. The only witnesses were Alexander, her husband, and vocational expert Terri Crawford. Alexander testified that she was 41-years-old, and that she had obtained a GED as well as a B.S. in Psychology from Drury University in 2000. She had also obtained an EMT license in 2003. Alexander had previously worked as a caseworker, teacher's aide, food service manager and cook helper. (Tr. 15). Alexander was not engaged in competitive employment to any significant extent for a number of years before the alleged onset of disability. (Tr. 16-17).

The ALJ asked Crawford two hypothetical questions: one based on the limitations set forth by Maudlin, the non-examining agency physician, and one based on the limitations set forth by Barbe, Alexander's treating physician. Crawford replied that under the limitations set forth by Maudlin, Alexander would be able to perform her past

5

work as a caseworker, but not as it was performed in the past by Alexander. (Tr. 492).
According to Crawford, Alexander would be able to perform other sedentary work of
order clerk and final assembler. (Tr. 493). Under the limitations set forth by Barbe,
Crawford testified that Alexander could not perform her past relevant work or any other
work, due to the inability to complete an 8-hour day. (Tr. 493-94).

**II.     Discussion**

To establish that she is entitled to benefits, Alexander must show that she was
unable to engage in any substantial gainful activity by reason of a medically determinable
impairment which has lasted or can be expected to last for a continuous period of not less
than 12 months. 42 U.S.C. § 423(d) and § 1382c(a)(3)(A).

Although the ALJ found that Alexander could not return to her past relevant work,
he nonetheless concluded that she could still perform work as an order clerk or final
assembler given the restrictions set forth by Maudlin. In reaching his conclusion, the ALJ
discussed the limitations set forth by Barbe, but did not discuss the weight that he
assigned those findings. Alexander argues that the ALJ therefore erred because the
treating physician's opinion is normally given substantial or controlling weight. *Hacker
v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). However, the ALJ need not give
controlling weight to a physician's RFC assessment that is inconsistent with other
substantial evidence in the record. *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir.
2004).

In this case, the substantial evidence in the record showed that Barbe's RFC assessment was inconsistent with the medical evidence and Alexander's stated daily activities. Alexander does not deny that she has not had any significant musculoskeletal impairments since January, 2006, and that Alexander's X-rays and MRIs since 2005 have been normal. (Tr. 15-16). Alexander had X-rays taken in January, 2006, after she reported that she fell on cement and hurt her wrist when she was running with a child at the same time she elsewhere reported that she could not sit, walk or stand for any length of time due to pain. (Tr. 16). There is little or no objective medical evidence to support Alexander's claims that her headaches are debilitating or that physical pain restricts her ability to undertake normal movement. (Tr. 17). Indeed, the objective evidence shows that Alexander is not so impaired. Finally, it is clear that Barbe's assessment of Alexander's restrictions were made after limited examination and are consistent with Maudlin's findings except for the ability to complete an 8-hour work day. While Alexander is correct that the ALJ must normally discuss the weight accorded to the opinion of a treating source, there is no reversible error here where the ALJ clearly considered Barbe's findings and determined that his RFC assessment was inconsistent with the substantial evidence in the record.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Alexander's Motion for Summary Judgment [Doc. # 6] is DENIED.

7

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: May 16, 2008
Jefferson City, Missouri